UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SOFIA KAUMA,

        Plaintiff,

v.

COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.

Case No. 1:11-cv-1047

Honorable Joseph G. Scoville

**OPINION**

This is a social security action brought under 42 U.S.C. §§ 405(g), 1383(c)(3) seeking review of a final decision of the Commissioner of Social Security denying plaintiff's claims for disability insurance benefits (DIB) and supplemental security income (SSI) benefits. On May 5, 2006, plaintiff filed her applications for benefits alleging an April 20, 2006 onset of disability.[1] (A.R. 141-48). Her claims were denied on initial review. (A.R. 66-74). On July 6, 2009, she received a hearing before an administrative law judge (ALJ), at which she was represented by counsel. (A.R. 31-63). On August 19, 2009, the ALJ issued a decision finding that plaintiff was not disabled. (A.R. 22-30). On August 3, 2011, the Appeals Council denied review (A.R. 2-5), and the ALJ's decision became the Commissioner's final decision.

---

[1] SSI benefits are not awarded retroactively for months prior to the application for benefits. 20 C.F.R. § 416.335; *see Kelley v. Commissioner*, 566 F.3d 347, 349 n.5 (3d Cir. 2009); *see also Newsom v. Social Security Admin.*, 100 F. App'x 502, 504 (6th Cir. 2004). The earliest month in which SSI benefits are payable is the month after the application for SSI benefits is filed. Thus, June 2006 is plaintiff's earliest possible entitlement to SSI benefits.

Plaintiff filed a timely complaint seeking judicial review of the Commissioner's decision denying her claims for DIB and SSI benefits. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, the parties voluntarily consented to have a United States magistrate judge conduct all further proceedings in this case, including entry of final judgment. (docket # 13). Plaintiff argues that the Commissioner's decision should be overturned because "the ALJ did not discuss all the material issues of fact and law" and because the ALJ's hypothetical question posed to the vocational expert "failed to include all of Ms. Kauma's limitations." (Plf. Brief at 11, 15, docket # 16). Upon review, the Commissioner's decision will be affirmed.

## **Standard of Review**

When reviewing the grant or denial of social security benefits, this court is to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner correctly applied the law. *See Elam ex rel. Golay v. Commissioner*, 348 F.3d 124, 125 (6th Cir. 2003); *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Substantial evidence is defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Heston v. Commissioner*, 245 F.3d 528, 534 (6th Cir. 2001) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *see Rogers v. Commissioner*, 486 F.3d 234, 241 (6th Cir. 2007). The scope of the court's review is limited. *Buxton*, 246 F.3d at 772. The court does not review the evidence *de novo*, resolve conflicts in evidence, or make credibility determinations. *See Ulman v. Commissioner*, 693 F.3d 709, 713 (6th Cir. 2012); *Walters v. Commissioner*, 127 F.3d 525, 528 (6th Cir. 1997). "The findings of the [Commissioner] as to any fact if supported by substantial evidence shall be conclusive . . . ." 42 U.S.C. § 405(g); *see McClanahan v. Commissioner*, 474 F.3d 830, 833

(6th Cir. 2006). "The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. . . . This is so because there is a 'zone of choice' within which the Commissioner can act without fear of court interference." *Buxton*, 246 F.3d at 772-73. "If supported by substantial evidence, the [Commissioner's] determination must stand regardless of whether the reviewing court would resolve the issues of fact in dispute differently." *Bogle v. Sullivan*, 998 F.2d 342, 347 (6th Cir. 1993); *see Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996) ("[E]ven if the district court -- had it been in the position of the ALJ -- would have decided the matter differently than the ALJ did, and even if substantial evidence also would have supported a finding other than the one the ALJ made, the district court erred in reversing the ALJ."). "[T]he Commissioner's decision cannot be overturned if substantial evidence, or even a preponderance of the evidence supports the claimant's position, so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003); *see Kyle v. Commissioner*, 609 F.3d 847, 854 (6th Cir. 2010).

**Discussion**

The ALJ found that plaintiff met the disability insured status requirements of the Social Security Act on April 20, 2006, her alleged onset of disability, and continued to meet the requirements through the date of the ALJ's decision. (A.R. 24). Plaintiff had not engaged in substantial gainful activity on or after April 20, 2006. (A.R. 24). Plaintiff had the following severe impairments: "affective disorder [and] dyslexia." (A.R. 24). At step 3 of the sequential analysis,[2]

---

[2] "Administrative law judges employ a five-step sequential inquiry to determine whether an adult claimant is disabled within the meaning of the Social Security Act." *Warner v. Commissioner*,

the ALJ determined that plaintiff did not have an impairment or combination of impairments which met or equaled the requirements of the listing of impairments. (A.R. 25). The ALJ found that plaintiff retained the residual functional capacity (RFC) to perform unskilled medium work as defined in 20 C.F.R. §§ 404.1567(c), 416.967(c), which did not require "dealing with the public." (A.R. 26). The ALJ found that plaintiff's testimony regarding her subjective limitations was not fully credible. (A.R. 26-29). The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis, because she was capable of performing her past relevant work as a janitor.[3] (A.R. 29-30).

---

375 F.3d 387, 390 (6th Cir. 2004). Under the sequential analysis, "The claimant must first show that she is not engaged in substantial gainful activity. Next, the claimant must demonstrate that she has a 'severe impairment.' A finding of 'disabled' will be made at the third step if the claimant can then demonstrate that her impairment meets the durational requirement and 'meets or equals a listed impairment.' If the impairment does not meet or equal a listed impairment, the fourth step requires the claimant to prove that she is incapable of performing work that she has done in the past. Finally, if the claimant's impairment is so severe as to preclude the performance of past work, then other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed. The burden shifts to the Commissioner at this fifth step to establish the claimant's ability to do other work." *White v. Commissioner*, 572 F.3d 272, 282 (6th Cir. 2009).

[3]Plaintiff has a history of alcohol and drug abuse. (A.R. 43-44, 253, 258, 262-63, 270, 275, 336, 338, 340, 515-16, 582, 621, 623, 626-27, 649-51). Since 1996, the Social Security Act, as amended, has precluded awards of SSI and DIB benefits based upon alcoholism and drug addiction. *See* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); 20 C.F.R. §§ 404.1535, 416.935; *see also Bartley v. Barnhart*, 117 F. App'x 993, 998 (6th Cir. 2004); *Hopkins v. Commissioner*, 96 F. App'x 393, 395 (6th Cir. 2004). The claimant bears the burden of demonstrating that substance abuse was not a factor contributing to her disability. *See Cage v. Commissioner*, 692 F.3d 118, 122-25 (2d Cir. 2012); *see also Zarlengo v. Barnhart*, 96 F. App'x 987, 989-90 (6th Cir. 2004). Because plaintiff was found not to be disabled, the ALJ was not required to decide the issue of whether substance abuse was material to a finding of disability.

**1.**

Plaintiff argues that the Commissioner's decision should be overturned because the ALJ "did not discuss all the material issues of fact and law." (Plf. Brief at 11). It is well established that "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered." *Daniels v. Commissioner*, 152 F. App'x 485, 489 (6th Cir. 2005); *see Boseley v. Commissioner*, 397 F. App'x 195, 199 (6th Cir. 2010). This argument, standing alone, provides no ground for relief.

A. Dr. Guernsey

Plaintiff argues that the ALJ failed to "correctly assess" Dr. Guernsey's opinion of August 2006:

> [The ALJ did not] correctly assess Dr. Guernsey's opinion of August 2006. He simply stated, "Dr. Guernsey was not treating the claimant at that time and appeared to reflect the claimant's prior condition." He referred to Ex 23F. Tr. 26. Dr. Guernsey's opinion of August 2006 was Ex. 27F. When Dr. Guernsey completed that form, she said she had seen Ms. Kauma repeatedly since 1997. Tr. 671. There is no indication that Dr. Guernsey was no longer a treating physician. Records from Psychiatric Associates of Ingham show that they received the referral of Ms Kauma from Dr. Guernsey in December 2006.

(Plf. Brief at 11-12). There are no records of any treatment provided by Dr. Guernsey during the period at issue: April 20, 2006, through August 19, 2009. The only treatment records from Dr. Guernsey are "pharmacologic management progress notes" dated July 13 and December 9, 2004, and May 20 and August 17, 2005, long before plaintiff's alleged onset of disability. (A.R. 299-302). Dr. Guernsey's August 2006 statement suggests that she last saw plaintiff on June 5, 2006 (A.R. 669), but there are no underlying treatment records. The intake document from Psychiatric Associates emphasized by plaintiff identifies Dr. Guernsey as a "referral source," not a treating

physician. (A.R. 642). The ALJ's finding that Dr. Guernsey was not a treating physician during the period at issue is supported by substantial evidence. *See Kornecky v. Commissioner*, 167 F. App'x 496, 506-07 (6th Cir. 2006). Because Dr. Guernsey was not a treating physician, the ALJ was "not under any special obligation to defer to her opinion[s] or to explain why he elected not to defer to [them]." *Karger v. Commissioner*, 414 F. App'x 739, 744 (6th Cir. 2011).

Plaintiff argues that Dr. Guernsey and others gave plaintiff low global assessment of functioning (GAF) scores. (Plf. Brief at 12-13). The subjective GAF scores were not entitled to any particular weight. *See Kornecky v. Commissioner*, 167 F. App'x at 511. "GAF examinations measure psychological, social, and occupational functioning on a continuum of mental-health status from 0 to 100, with lower scores indicating more severe mental limitations." *White v. Commissioner*, 572 F.3d 272, 276 (6th Cir. 2009). A GAF score is a subjective rather than an objective assessment. *Id*. "GAF is a clinician's subjective rating of an individual's overall psychological functioning. A GAF score may help an ALJ assess mental RFC, but it is not raw medical data. Rather, it allows a mental health professional to turn medical signs and symptoms into a general assessment, understandable by a lay person, of an individual's mental functioning." *Kennedy v. Astrue*, 247 F. App'x 761, 766 (6th Cir. 2007); *see Kornecky*, 167 F. App'x at 503 n.7. The DIAGNOSTIC & STATISTICAL MANUAL OF MENTAL DISORDERS' (DSM-IV's) explanation of GAF scale indicates that "a score may have little or no bearing on the subject's social and occupational

functioning."[4]  *Kornecky*, 167 F. App'x at 511; *see Oliver v. Commissioner*, 415 F. App'x 681, 684 (6th Cir. 2011).

B.    Listing 12.05(C)

Plaintiff argues: "The ALJ did not address the evidence of Ms. Kauma's possible meeting the Listing of Impairments at 12.05C. In her opening statement, the attorney referenced this possibility." (Plf. Brief at 13). Plaintiff's argument avoids discussion of the context in which her attorney's statement was made. The hearing transcript reveals that plaintiff's attorney "kind of alluded" to the "possibility" that plaintiff met the requirements of listing 12.05(C). (A.R. 35). She asked the ALJ to keep the record open to allow her to obtain and submit plaintiff's school records:

> ATTY:    The only thing that -- I kind of alluded to in the end -- the possibility that the only 12.05C issue here. We put in a request for school records and we're still looking -- my assistant was trying to get them. They weren't sure if they were still in existence or not. But they may be very important. And I don't want to hold the record open for any long period of time for these. But I'd like permission if we can obtain them to send them in because she was in special ed through her entire school. And she said there was testing done at that time. And her description of her relationship with school would indicate that there probably is enough evidence to show that the one [IQ test] done by Par Rehab [phonetic] probably wasn't too far off.

(A.R. 35-36). The ALJ kept the record open. (A.R. 61-62). Thereafter, plaintiff did not submit school records of any kind.

The evidence that was presented to the ALJ indicated that plaintiff graduated from high school and "did rather well." (A.R. 267-68). Plaintiff went on to attend Michigan State

---

[4]"Significantly, the SSA has refused to endorse the use of the GAF scale." *Bennett v. Commissioner*, No. 1:07-cv-1005, 2011 WL 1230526, at * 3 (W.D. Mich. Mar.31, 2011). GAF scores "have no direct correlation to the severity requirements of the mental disorder listings." *DeBoard v. Social Security Admin.,* 211 F. App'x 411, 415 (6th Cir. 2006).

University and received her degree in horse management. (A.R. 37, 268, 339). She also obtained a nurse's aid certificate. (A.R. 263, 271). During the period she claims to have been disabled, plaintiff was studying to become a gemologist. (A.R. 585-86). Thus, it is not surprising that the ALJ wasted little time discussing the "possibility" that plaintiff had listing-level mental retardation, when the supporting evidence promised was never produced.

"At step three [of the sequential analysis], an ALJ must determine whether the claimant's impairment meets or is equivalent in severity to a listed mental disorder. The Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience. In other words, a claimant who meets the requirements of a listed impairment will be deemed conclusively disabled." *Rabbers v. Commissioner*, 582 F.3d 647, 653 (6th Cir. 2009) (internal quotations and citations omitted). It is well established that a claimant must show that she satisfies all the individual requirements of a listing. *See Elam*, 348 F.3d at 125. "If all the requirements of the listing are not present, the claimant does not satisfy that listing." *Berry v. Commissioner*, 34 F. App'x 202, 203 (6th Cir. 2002); *see Malone v. Commissioner*, No. 12-3028, 2012 WL 5974463, at * 1 (6th Cir. Nov. 29, 2012). It is insufficient that a claimant comes close to satisfying the requirements of a listed impairment. *Elam*, 348 F.3d at 125. The ALJ found that plaintiff did not meet the requirements of any listed impairment.[5] (A.R. 25).

---

[5]Although the ALJ's opinion focused on listing 12.04, his failure to discuss listing 12.05C does not mean that he failed to consider this listing. *See Justice v. Commissioner*, No. 12-3150, 2013 WL 645957, at * 5 (6th Cir. Feb. 22, 2013).

"Listing 12.05 describes circumstances in which mental retardation is severe enough to preclude gainful activity." *Turner v. Commissioner*, 381 F. App'x 488, 491 (6th Cir. 2010). "The structure of listing for mental retardation is different from that of the other mental disorders listings. Listing 12.05 contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A). "[A] claimant will meet the listing for mental retardation only if the claimant's impairment satisfies the diagnostic description in the introductory paragraph *and* any one of the four sets of criteria." *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001); *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A); *see also Cheatum v. Astrue*, 388 F. App'x 574, 576 (8th Cir. 2010); *Randall v. Astrue*, 570 F.3d 651, 659-60 (5th Cir. 2009).

The specific requirements of listing 12.05 are as follows:
12.05 Mental Retardation: Mental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.
The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
A. Mental incapacity as evidenced by dependence on others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded;
OR
B. A valid verbal, performance, or full scale IQ of 59 or less;
OR
C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function;
OR
D. A valid verbal, performance or full scale IQ of 60 though 70, resulting in at least two of the following:
    1. Marked restriction of activities of daily living; or
    2. Marked difficulties in maintaining social functioning; or
    3. Marked difficulties in maintaining concentration, persistence, or pace; or
    4. Repeated episodes of decompensation, each of extended duration.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05.

Plaintiff does not seriously engage the requirements of listing 12.05, nor could she on this record. The administrative record contains no school records. There are no medical records from plaintiff's developmental period before age 22. Plaintiff attained age 22 in 1988. The earliest medical records she submitted in support of her claims for DIB and SSI benefits are from 2004. Plaintiff testified that she attended special education classes in high school (A.R. 37), but it is well established that placement in a special classroom falls short of establishing significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested before age 22. *See Foster v. Halter*, 279 F.3d at 352; *Post v. Commissioner*, No. 1:10-cv-271, 2011 WL 4954053, at * 8 (W.D. Mich. Sept. 26, 2011) (collecting cases). Plaintiff complains that the ALJ made "no mention" of her IQ score, but there was no need for him to do so on such a patently deficient record. Plaintiff emphasizes a single low IQ score of 68 she achieved in 2007 during a test performed by Psychologist VanBuren-Hay at Par Rehab Services. However, Psychologist VanBuren-Hay found that plaintiff had "Borderline Intellectual Functioning" rather and mental retardation. (A.R. 621-24). On March 21, 2008, Psychologist Ostien found that plaintiff exhibited "average" capabilities for general fund of information, "diminished to borderline capabilities" for abstract reasoning, and "low average" capabilities for social judgment and comprehension. (A.R. 650-51).

Plaintiff argues that although the evidence was completely insufficient to meet listing 12.05(C), the ALJ's "failure to address the issue at all means that he has not followed the instructions of *Reynolds* [*v. Commissioner*, 424 F. App'x 411 (6th Cir. 2011)]." Leaving aside the impossibility of "following the instructions" of an unpublished decision that did not exist until years after the ALJ entered his decision, *Reynolds* stands for the unremarkable proposition that an ALJ must include a

discussion of his findings and conclusions, and the reasons or basis therefore, on all material issues of fact. *Id.* at 414. The ALJ easily satisfied these requirement when he found that plaintiff's impairments did not meet or equal the requirements of any listed impairment. (A.R. 25). Plaintiff's attorney's argument regarding listing 12.05(C) would have warranted more serious consideration by the ALJ if counsel had presented a developed argument supported by evidence, such as school records, establishing that plaintiff had carried her burden at step 3 of demonstrating that she satisfied all the individual requirements of a listing. *See Elam*, 348 F.3d at 125.

**2.**

Plaintiff argues that the ALJ's hypothetical question to the vocational expert "failed to include all of Ms Kauma's limitations." (Plf. Brief at 15). She argues that the ALJ's hypothetical question should have "include[d] limitations related to ADHD, limitations in short term verbal and visual memory, or limitations in auditory and overall mental processing" and "difficulties in completing a normal workday or workweek." (*Id.*). This argument is patently meritless. The ALJ found that plaintiff was not disabled at step 4 of the sequential analysis because she was capable of performing her past relevant work. (A.R. 29-30). The ALJ never reached step 5 of the sequential analysis. "Thus, any criticism of a hypothetical question the ALJ did not rely on when he found that plaintiff was not disabled is irrelevant." *Lowe v. Commissioner*, No. 1:10-cv-294, 2011 WL 4352768, at * 7 (W.D. Mich. Aug. 26, 2011); *see Bermudez v. Commissioner*, No. 10-13944, 2011 WL 3862398, at * 3 (E.D. Mich. Aug. 8, 2011).

## **Conclusion**

For the reasons set forth herein, the Commissioner's decision will be affirmed.

Dated: March 11, 2013 /s/ Joseph G. Scoville
United States Magistrate Judge